IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANB 3232 P Street LLC<br>1130 Connecticut Avenue, N.W., Suite 200<br>Washington, DC 20036-3904 | *<br><br>* |
| Plaintiff, | * |
| v. | *   Civil Case No. |
| ERIE INSURANCE EXCHANGE<br>100 Erie Insurance Place<br>Erie, Pennsylvania 16530 | *<br><br>* |
| **Serve on:**<br>Paul Miller, Resident Agent<br>12121 Tech Road<br>Silver Spring, Maryland 20940 | *<br><br>*<br><br>* |
| and | * |
| DOWNS & ASSOCIATES, INC<br>131 Elden Street, Suite 300<br>Herndon, Virginia 20170 | *<br><br>* |
| **Serve on:**<br>Brian Downs, Registered Agent<br>131 Elden Street, Suite 300<br>Herndon, Virginia 20170 | *<br><br>* |
| and | * |
| BRIAN DOWNS<br>131 Elden Street, Suite 300<br>Herndon, Virginia 20170 | *<br><br>* |
| Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

COMPLAINT

Plaintiff, ANB 3232 P Street LLC ("ANB"), by its undersigned counsel, hereby sues Defendants, Erie Insurance Exchange ("Erie"), Downs & Associates, Inc. ("DA") and Brian Downs ("Downs"), and for its Complaint states:

PARTIES

1. Plaintiff, ANB, is a limited liability company organized under the laws of the District of Columbia (the "District"), with its principal place of business located at 1130 Connecticut Avenue, N.W., Suite 200, Washington, D.C. 20036.

2. Defendant, Erie, is an insurance company organized under the laws of the state of Pennsylvania, with its principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530.

3. DA is an insurance agency organized under the laws of the State of Virginia, with its principal place of business located at 131 Elden Street, Suite 300, Herndon, Virginia 20170. At all times relevant hereto, DA and Erie held DA out to the public as an authorized agent of Erie's for the purpose of providing expert insurance advice and insurance policies underwritten by Erie, including, *inter alia*, property, casualty and builder's risk insurance. At all times relevant hereto, DA had actual authority from Erie to perform these functions as an authorized Erie agent, and all knowledge acquired by DA and Downs relating to these functions is therefore imputed to Erie. At all times relevant hereto, DA also held itself out as a professional insurance agency and advisor, catering to the insurance needs of the public, including entities such as ANB.

4.      Downs is a resident of the state of Virginia. At all times relevant hereto, Downs has been the President of DA. All of Downs' acts and omissions in connection with this matter were performed in his capacity as the President of DA.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.A. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. This Court may exercise personal jurisdiction over the Defendants because the subject insurance policy (the "Policy") was sold by the Defendants to ANB in the District; the subject property to which the Policy applied is located within the District; and the events giving rise to this action occurred in the District. In addition, all the Defendants conduct regular business within the District, including the business that gave rise to the disputes that are the subject of this action.

6.      Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391(b)2.

## FACTS

7.      On or about August 3, 2011, ANB, an affiliate of Premier Bank, Inc. ("Premier"), acquired an unfinished townhouse development (the "Premises") as a result of a foreclosure. The Premises are located at 915-935 12th Street, N.W., Washington, D.C. 20004.

8.      At the time ANB acquired the Premises, ANB's Manager, Boris Orcev ("Orcev"), who is also Premier's Washington Division President, contacted Downs, of DA, and requested that Downs procure and provide to ANB all suitable and necessary insurance coverage to fully protect ANB and ANB's interests in the Premises. Orcev told Downs that the Premises had been obtained through a foreclosure, and that it was vacant and unfinished and would need substantial construction work done on it to make it ready for use and occupancy. At the time this

request was made, Orcev and Downs had been acquainted for many years, with Premier Bank or affiliates of Premier having relied upon Downs and DA on several past occasions to recommend, procure and provide suitable insurance for properties in which Premier and its affiliates had an interest, including foreclosed properties.

9. It is sometimes the case that properties acquired by Premier or its affiliates are either unfinished or in disrepair, and require additional construction work to make them ready for use, occupancy and/or sale. Moreover, because of regular delays in the permitting process and other construction delays, it is not unusual that such properties would intermittently experience time periods when little or no physical construction activity was occurring at the property. These delays could, on occasion, exceed 60 days in length. Downs and DA were fully aware of these facts with respect to the properties that Premier and its affiliates were asking Downs and DA to insure. This includes the subject Premises, which Orcev explained to Downs was in need of substantial rehabilitation.

10. Downs and DA understood all of the above, and Downs, in his capacity as President of DA, agreed to procure for ANB all of the necessary and appropriate insurance for the Premises to protect it against all foreseeable insurable risks. This included agreeing to procure appropriate theft and vandalism coverage for the Premises. In return, DA was paid commissions and other financial benefits associated with procuring the insurance for ANB. At all times relevant hereto ANB was justifiably relying on Downs' and DA's purported expertise as insurance agents and advisors to recommend and procure a suitable insurance policy for ANB, given the circumstances as presented.

11. Downs and DA never asked Orcev or anyone else affiliated with ANB about the planned construction schedule, or whether necessary construction permits were in hand or still

needed to be obtained, or whether all necessary architectural and engineering drawings and approvals were in hand or still needed to be obtained, or any other questions a reasonable and prudent insurance advisor and agent would have asked under the same or similar circumstances in order to make sure the insurance procured for ANB was suitable for ANB's needs.  Downs and DA knew or should have known that there was a real risk that, in addition to being unoccupied during the rehabilitation, there may have been interruptions in the construction activity at the Property that could conceivably extend beyond 60 days.

12.     In its capacity as an authorized agent for Erie, DA, on August 3, 2011, procured for ANB the Policy (Erie Policy No. Q440360592).  DA, through Downs, advised Orcev and ANB that the Premises were properly and fully insured against various risks, including theft and vandalism.

13.     The Policy contains "Condition No. 16," headed "Vacancy and Unoccupancy, which provides, in pertinent part:

> **Property may be unoccupied without limit of time. If the building at which the "loss" occurs is vacant for more than 60 consecutive days before the "loss", then we will:  a. Not pay for any "loss" caused by 1) vandalism or malicious mischief, water damage, glass breakage or theft.**
>
> ********
>
> **Buildings under construction are not considered vacant or unoccupied.**

Hereinafter, Condition No. 16 shall be referred to as the "Vacancy Exclusion."  The phrase "under construction," which appears in the Vacancy Exclusion, is not defined anywhere in the Policy.  Although they had a legal duty to do so as ANB's insurance agents and advisors, neither DA nor Downs ever discussed the existence, meaning or effect of the Vacancy Exclusion with ANB, either at the time the Policy was issued or at any time before the subject loss.  Likewise,

5

although they had a legal duty to do so as ANB's insurance agents and advisors, neither DA nor Downs ever discussed with ANB the advisability, under the circumstances, of obtaining a vacancy endorsement to negate the potential hole in the theft and vandalism coverage created by the Vacancy Exclusion.  Had Downs and DA discussed these subjects with ANB, ANB would have authorized all measures necessary to avoid the effects of the Vacancy Exclusion, including obtaining a vacancy endorsement, which could have been accomplished.

14.     Although there is no dispute that the Premises were vacant at the time the Policy was put in place, and thereafter, and that DA and Downs knew this, this does not mean that there was no construction-related activity, both on and off site.  From the time ANB obtained ownership of the Premises in foreclosure, it took numerous steps to complete the construction and rehabilitation of the Premises.  This included hiring a company called Advisors, LLC ("Advisors") to supervise and coordinate the work; the hiring of architects and engineers to prepare and submit plans to the appropriate authorities in the District; applications for necessary building permits, and myriad other tasks to keep the construction project moving forward and on track.  These tasks included, but were not limited to, ongoing stabilization of erosion and sediment control devices of the Premises; installation of barbed construction fencing and locked gates along the perimeter of the Premises; installation of concrete walkways along the Premises' frontage; installation of street lighting along the Property frontage; the mowing of grass; the installation of new locks on townhouse entry doors; securing and protecting windows; reinstalling exterior basement door frames; various plumbing repairs; and numerous site visits by construction personnel, engineers, architects and various supervisory personnel from Advisors. Because the permitting for the Project was in disarray when the Property was acquired in foreclosure by ANB, work on certain aspects of the construction was delayed while new permits

were being obtained. However, everything was being done to keep the construction project on track and on time.

15. This activity was continuing as of June 27, 2012, when a break-in occurred at the Premises, which resulted in the theft of a number of air conditioning units and other property from the Premises. The value of the stolen property was approximately $179,000. The theft was discovered in the early morning of June 27, 2012. One of ANB's engineers had gone to the site to conduct a test on the piping system for design purposes, and at that time saw that various HVAC units had been gutted and/or removed, presumably for the cooper. That same day ANB reported the theft to Downs, via email, requesting coverage for the loss (i.e., the "Claim").

16. On February 6, 2013, Mr. John Laudwein ('Laudwein"), a "Property Claims Supervisor" for Erie, wrote to Mr. Orcev of ANB regarding the Claim (the "Laudwein Letter"). In the Laudwein Letter, Erie denied the Claim, arguing (1) that the Claim was allegedly not timely reported to Erie, and (2) that the Claim was allegedly barred by the Vacancy Exclusion, due to an alleged lack of construction activity in connection with the Premises in the months preceding the loss.

17. In response to Laudwein Letter, ANB supplied Erie with additional information relating to the ongoing construction work on the Premises.

18. On March 15, 2013, Mr. William H. Clem ("Clem"), a "Property Specialist" for Erie, wrote to ANB (the "Clem Letter"). In the Clem Letter, Erie maintained its position that, notwithstanding the work and other tasks that had been done at the Premises in connection with the construction project in the months preceding the loss, that construction work was not, in Mr. Clem's opinion, "of any substance," and therefore Erie was still denying the Claim.

19. Subsequent to its sending of the Clem Letter, Erie acknowledged that late notice of the Claim was not a reason to deny coverage. However, Erie continues to cite the Vacancy Exclusion as a basis to deny coverage of the Claim, notwithstanding the ongoing construction-related activity at the Premises described above in the months preceding the claim. It is ANB's position that the Claim should be covered under the Policy.

**COUNT I**
(Declaratory Judgment – *ANB v. Erie*)

20. ANB repeats and incorporates by reference paragraphs 1 through 19 of this Complaint as if fully set forth herein.

21. ANB and Erie have a disagreement regarding the applicability of insurance coverage under the Policy for the losses comprising the Claim. Erie continues to insist that the Claim is barred by the terms of the Vacancy Exclusion. ANB contends that the Vacancy Exclusion does not bar coverage of the Claim. In the alternative, it is ANB's position that Erie is estopped to rely on the Vacancy Exclusion to deny the Claim, or has otherwise waived the applicability of the Vacancy Exclusion because its agents, DA and Downs, knew or should have known that the Premises was vacant when the Policy was issued and knew or should have known that, under the circumstances, there was a real risk that the theft and vandalism coverage under the Policy could be rendered illusory as a result of the Vacancy Exclusion. In light of this knowledge, Erie should not have issued the Policy with the Vacancy Exclusion, and cannot rely upon it to deny coverage for the Claim.

22. The insurance coverage issues presented in this case constitute an actual controversy within this Court's jurisdiction within the meaning of 28 U.C.S.A. § 22(a)(1), and it is appropriate for this Court to declare the rights and other legal relations of Erie and ANB

because doing so will provide clarity to ANB and Erie in their legal relationship of insured and insurer, and will otherwise resolve the controversies between the parties.

WHEREFORE, pursuant to Fed.R.Civ.P. 57 and 28 U.S.C.A. § § 2201 and 2202, ANB hereby requests that this Court (1) declare the rights of the parties with respect to the Policy and Claim that are the subject of this case; (2) declare that the Vacancy Exclusion has no application to the facts underlying the Claim, and is not a basis for Erie to deny the Claim; (3) declare that Erie waived and/or is estopped to assert the application of the Vacancy Exclusion to deny the Claim; (4) declare that Erie must immediately pay the Claim in full; and (5) award ANB its interests, costs, attorney's fees and such other and further relief as the Court deems appropriate in order to provide ANB all of the relief to which it is entitled.

## COUNT II
(Breach of Contract – *ANB v. Erie*)

23. ANB repeats and incorporates by reference paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24. The Policy constitutes a contract between ANB and Erie.

25. Under the terms of the Policy, Erie should have paid the Claim as presented.

26. Erie's failure to pay the Claim constitutes an unjustified breach of the Policy.

27. ANB has been damaged as a result of Erie's breach of the Policy.

WHEREFORE, ANB demands judgment against Erie in the amount of $178,910.17, plus interest, costs, attorney's fees and such other and further relief as the Court deems appropriate.

## COUNT III
(Negligence – *ANB v. DA and Downs*)

28. ANB repeats and incorporates by reference paragraphs 1 through 27 of this Complaint as if fully set forth herein.

29. DA and Downs were, at all times relevant hereto, Erie's authorized agents for the purpose of advising customers of Erie regarding appropriate insurance policies for their insurance needs, and to secure and provide Erie's insurance policies to Erie's customers, including ANB. Erie, DA and Downs held themselves out as qualified to perform these services in their advertising and communications to the public, including to ANB, and ANB justifiably relied thereon.

30. As the President of DA, and as a frequent provider of insurance consultation services to Orcev in connection with the insurance needs of Premier and its affiliates, Downs undertook to advise ANB regarding its insurance needs in connection with ANB's acquisition of the Premises, and to procure and provide the Policy to ANB. Downs did this knowing that ANB expected to be insured to the fullest extent possible, with no unnecessary or ill-advised exclusions being present in the Policy that could conceivably give rise to the denial of a potential claim, given the facts and circumstances surrounding ANB's construction and rehabilitation of the Premises, as more fully described above. DA received commissions and other remuneration for providing these services.

31. DA and Downs had a duty to ANB, both at the time the Policy was procured and at various subsequent intervals, including upon all renewals of the Policy, to take all actions that reasonable and prudent insurers, agents and advisors would take under the same or similar circumstances to ensure that their client, ANB, was fully and properly insured. This would have included, but not be limited to, anticipating that delays and other circumstances relating to the ongoing construction work at the Premises could conceivably implicate the Vacancy Exclusion and, for this reason, they should have expressly discussed the existence, meaning and effect of the Vacancy Exclusion with ANB, and otherwise procured a policy that did not contain the

Vacancy Exclusion. In this regard, DA and Downs also should have made all appropriate inquiries to determine if the Vacancy Exclusion could conceivably be implicated before procuring and providing the Policy to ANB. DA and Downs failed to do this; rather, they erroneously assured ANB that ANB was properly and fully insured against all foreseeable risks.

32. DA and Downs breached their duty of care to ANB, as insurance agents and advisors, by not discussing with ANB the existence, meaning and effect of the Vacancy Exclusion, by procuring and providing the Policy with the Vacancy Exclusion in place, and otherwise not taking appropriate steps to ensure that ANB was insured to the fullest extent possible under the circumstances presented.

33. DA's and Downs' breaches of their duties of care to ANB have, at the least, resulted in ANB becoming embroiled in the instant dispute with Erie, which has resulted in significant attorney's fees and other expenses being incurred by ANB. Moreover, if it is determined that the Vacancy Exclusion precludes the Claim, then DA's and Downs' breaches of their duties of care further damaged ANB in at least the amount of $178,910.17, plus interest and costs, representing the value of the Claim that would have been paid but-for their negligence.

WHEREFORE, ANB demands a judgment be entered against DA and Downs, jointly and severally, in the amount of $178,910.17, plus ANB's attorneys' fees and costs in an amount to be determined, plus interest on all amounts awarded, and such other and further relief as the Court deems appropriate.

**COUNT IV**
(Breach of Contract – *ANB v. DA*)

34. ANB repeats and incorporates by reference paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. DA contracted and agreed with ANB to advise ANB regarding the appropriate insurance coverage for the Premises to fully and completely insure ANB against all foreseeable risks, and to procure such insurance.

36. DA breached its contract and agreement by procuring and renewing the subject Policy, which was inappropriate and inadequate for ANB's insurance needs.

37. As a result of DA's breach of contract, ANB has been damaged.

WHEREFORE, ANB demands that a judgment be entered against DA in the amount of $178,910.17, plus ANB's attorney's fees and costs in an amount to be determined, plus interest on all amounts awarded, and such other and further relief as the Court deems appropriate.

        /s/
Steven F. Wrobel    MD 24985
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, MD 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)

Attorney for Plaintiff,
ANB 3232 P Street LLC

## DEMAND FOR JURY TRIAL

Plaintiff, ANB, pursuant to Fed.R.Civ.P. 38, hereby demands a trial by jury on all issues so triable in this matter.

        /s/
Steven F. Wrobel    MD24985
Rosenberg Martin Greenberg, LLP
25 South Charles Street, 21st Floor
Baltimore, MD 21201
(410) 727-6600 (phone)
(410) 727-1115 (fax)

                                                Attorney for Plaintiff,
                                                ANB 3232 P Street LLC